BRENDAN NGEHSI NEWANFORBI

1455 Cat Tail Drive

Stockton, CA 95204

Telephone: (209) 801-4442

Email: bnn.cdl@gmail.com

Plaintiff, In Pro Per

FILED

MAR 04 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN NGEHSI NEWANFORBI, | ) Case No.: 2:26-CV-0699-DC-JDP (P) |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DECLARATORY** |
| | ) **AND INJUNCTIVE RELIEF** |
| vs. | ) **PURSUANT TO 42 U.S.C.** |
| | ) **SECTION 1983** |
| JEFF MACOMBER, in his official | ) |
| capacity as Secretary of the | ) *(Challenge to Application of* |
| California Department of | ) *CDCR Policy 19-03 and Implementation* |
| Corrections and Rehabilitation, | ) *of Title 15, Sec. 3574)* |
| | ) |
| Defendant. | ) **EQUITABLE RELIEF ONLY** |
| | ) |

## INTRODUCTION

1. Plaintiff Brendan Ngehsi Newanforbi ("Plaintiff"), proceeding in pro per, brings this civil rights action under 42 U.S.C. Section 1983 and the Fourteenth Amendment to the United

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 42 U.S.C. § 1983

States Constitution against Jeff Macomber, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), in his official capacity, seeking to protect Plaintiff's constitutionally recognized liberty interest in an individualized parole discharge review.

2. This action arises from the continued field-level application of Policy 19-03 (Amended)--an internal directive utilizing categorical temporal minimums for parole retention--in lieu of an individualized assessment of Plaintiff's eligibility for earned discharge. While California's statutory and regulatory framework (Penal Code Section 3008(d) and Title 15, Section 3574, effective April 2025) outlines individualized clinical discretion as the mandated standard, it appears Plaintiff's review was still evaluated under the prior policy's categorical framework.

3. Plaintiff seeks **only prospective declaratory and injunctive relief** against Defendant in his official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908), together with attorneys' fees under 42 U.S.C. Section 1988. Plaintiff does not seek monetary damages from any party. Plaintiff seeks only a lawful, individualized discharge review under the current regulations; Plaintiff does not request an order directing immediate discharge from parole.

4. This action is not a petition for writ of habeas corpus. Plaintiff does not challenge the fact or duration of his parole sentence. Plaintiff respectfully challenges only the *procedures* by which eligibility for earned discharge is adjudicated. Success on the merits would not imply the invalidity of Plaintiff's conviction or sentence. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).

5. Plaintiff has filed a petition for writ of mandate in the Superior Court of the State of California addressing state statutory duties under Penal Code Section 3008(d) and Title 15, Section 3574. **This federal action is independent of the state proceeding and seeks only federal constitutional relief under 42 U.S.C. Section 1983.** This action does not seek review of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 42 U.S.C. § 1983

the state writ proceeding; it addresses whether the ongoing application of Policy 19-03 deprives Plaintiff of federal procedural due process rights. The state writ addresses whether California law was followed; this action addresses whether constitutionally adequate process was provided. *See Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (abstention inappropriate where federal constitutional claims are independent of state proceedings).

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343(a)(3)-(4). Declaratory relief is authorized under 28 U.S.C. Sections 2201-2202.

7. Venue is proper in the Eastern District of California under 28 U.S.C. Section 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Stockton, San Joaquin County.

## PARTIES

8. Plaintiff BRENDAN NGEHSI NEWANFORBI is an individual residing in Stockton, San Joaquin County, California. At all relevant times, Plaintiff was a parolee under CDCR supervision, CDC Number BF3571, Case Type PC 3000(b)(5)(B), with a California Static Risk Assessment (CSRA) score of 2.

9. Defendant JEFF MACOMBER ("Defendant") is the Secretary of CDCR. Defendant possesses the statutory and administrative authority to promulgate, amend, and ensure implementation of the regulations governing adult parole operations, including Title 15 of the California Code of Regulations. Defendant is sued exclusively in his official capacity for prospective declaratory and injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

## STATEMENT OF FACTS

### A. Plaintiff's Parole Status

10. Plaintiff is a twenty-nine-year-old first-term parolee. He was committed to CDCR custody following a conviction in Santa Clara County under Penal Code Sections 289(a)(1)(A) and 220(a)(1) and received a six-year sentence. Following release, Plaintiff was placed on active parole with a maximum controlling discharge date of December 2, 2030.

11. Plaintiff's Level of Service/Case Management Inventory (LS/CMI) score is **5**, placing him at **Level 2 -- Below Average Risk**.

### B. The Statutory Framework

12. Penal Code Section 3008(d)(2) provides that persons placed on parole shall "successfully complete a sex offender management program." The statute provides that the program's length shall be "**not less than one year, up to the entire period of parole**, as determined by the certified sex offender management professional in consultation with the parole officer and as approved by the court." The statute establishes a framework for individualized clinical discretion.

### C. Policy 19-03

13. CDCR promulgated "Sex Offender Management Program Earned Discharge Criteria, Policy 19-03 (Amended)" ("Policy 19-03"). For a parolee serving a ten-year parole term, Policy 19-03 generally outlines a minimum of **6.5 years** of active supervision before eligibility for Earned Discharge Criteria (EDC) consideration. In practice, this policy limits parole staff from exercising discretion to discharge a supervised person before the prescribed temporal minimum,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 42 U.S.C. § 1983

regardless of clinical progress or risk assessment scores. This appears to operate in tension with Section 3008(d)'s framework for individualized clinical determination.

### D. The Remedial Regulations

14. In *In re Frederick Dwyer*, Case No. SC-080355A (San Mateo County Superior Court, March 20, 2023), the court addressed CDCR's retention policies and the interpretation of the Legislature's directives regarding treatment completion.

15. In *ACSOL v. Macomber*, Case No. 23STCP02378, CDCR settled a systemic challenge to its implementation of Section 3008(d). Pursuant to the settlement, CDCR promulgated NCR 25-01, adopting Title 15, Section 3574, effective **April 2025**. The new regulations establish three treatment phases and provide individualized criteria for determining whether treatment completion is warranted at the statutory minimum of one year.

16. Under Section 3574(f), documented **"good cause"** is required to retain a supervised person beyond the minimum. The enumerated retention criteria include: (a) LS/CMI score of **11 or higher**; (b) Stable-2007 score of 4 or higher; (c) polygraph with deception found or new disclosures; or (d) parole violations **relevant to the sex offense**.

### E. The November 2025 Discharge Denial

17. On November 14, 2025, Parole Agent Long Moua (Badge No. 7472) signed the agent recommendation of CDCR Form 1502-DR (Discharge Review Report). On November 19, 2025, Unit Supervisor Gary Noguchi (Badge No. 7284) concurred, and Parole Administrator Keely Dodd (Badge No. 6462) approved the denial. The recommendation was: **Retain on Parole**.

18. The Report listed as aggravating factors that Plaintiff was unemployed, incurred

technical parole violations during the review period, and had not completed sex offender treatment. The mitigating factor noted was a stable residence with family.

19. Unit Supervisor Noguchi's written summary explicitly invoked Policy 19-03 as the basis for retention: "Based on Sex Offender Management Program Earned Discharge Criteria, Policy 19-03 (Amended), Subject is not eligible for EDC at this time due to having a 10-year parole term. [Plaintiff] has only completed approximately 4 years of the required 6.5 years of supervision."

20. This review occurred **eight months** after Title 15, Section 3574 took effect. However, the review provided to Plaintiff did not appear to include an analysis under Section 3574's framework, such as a Containment Team Meeting evaluation, a CDCR Form 3043, or an assessment of "good cause" for retention based on Plaintiff's LS/CMI score of 5.

## F. Application of Retention Criteria

21. If Plaintiff had been evaluated under Section 3574's individualized criteria rather than the 6.5-year categorical bar, the outcome may have differed substantially. Under Section 3574(f), failure to charge a GPS device does not expressly constitute a violation "relevant to the supervised person's sex offense." Plaintiff's LS/CMI score of 5 is below the 11-or-higher threshold. The factors cited in the Report appear inconsistent with the criteria that would mandate retention under the newly adopted regulatory framework. See n.1, infra.

---

1. Under Title 15, Section 3574(f), "good cause" for retention includes (a) an LS/CMI score of 11 or higher, (b) a Stable-2007 score of 4 or higher, (c) polygraph deception, or (d) parole violations relevant to the supervised person's sex offense. Plaintiff respectfully submits that his GPS charging failures do not squarely meet these specific criteria.

## G. Continued Field Application of Policy 19-03

22. It appears DAPO field units, including the Stockton 2 GPS Parole Unit, may be navigating conflicting frameworks--the new regulations requiring individualized assessment versus the prior policy outlining categorical temporal minimums. The continued practical application of Policy 19-03 in the field results in Plaintiff being evaluated under a superseded standard, which Plaintiff alleges deprives him of his constitutional right to appropriate procedural process.

## NATURE OF INJURY

23. As a result of the continued application of Policy 19-03, Plaintiff remains subject to: continuous GPS electronic monitoring; mandatory treatment compliance; residential curfews and travel restrictions; periodic law enforcement compliance checks; and registration obligations. These conditions constitute substantial restrictions on Plaintiff's liberty that he respectfully submits would be alleviated, or at least properly adjudicated, if his earned discharge eligibility were evaluated under the individualized framework of Section 3574.

## CAUSE OF ACTION

**Violation of Procedural Due Process -- Fourteenth Amendment**

**(42 U.S.C. Section 1983 -- Against Defendant in His Official Capacity)**

24. Plaintiff realleges and incorporates by reference each and every allegation set forth in all preceding paragraphs.

25. Plaintiff possesses a constitutionally recognized liberty interest in the fair and individualized adjudication of his parole discharge, consistent with Penal Code Section 3008(d) and Title 15, Section 3574. *See Morrissey v. Brewer*, 408 U.S. 471 (1972); *In re Gadlin*, 10 Cal.5th 915 (2020).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 42 U.S.C. § 1983

26. By continuing to apply the categorical temporal minimums of Policy 19-03, CDCR personnel deprived Plaintiff of this interest without providing the constitutionally adequate individualized process outlined by the state's own newly adopted regulations--namely, an assessment of clinical progress, risk scores, and "good cause" retention criteria.

27. The *Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test supports this claim: (1) Plaintiff's **private interest** is substantial given the ongoing restrictions of GPS monitoring and curfews; (2) the **risk of erroneous deprivation** when using a categorical temporal bar rather than individualized assessment is high, as illustrated by Plaintiff's LS/CMI score of 5; and (3) the **government's burden** to apply the Section 3574 criteria is minimal, as CDCR itself promulgated these regulations.

28. The denial of Plaintiff's discharge reflects the practical application of Policy 19-03, an official directive. The November 2025 Discharge Review Report relied upon Policy 19-03's temporal formula to resolve the review, rather than Section 3574's individualized criteria.

29. Defendant, as Secretary of CDCR, oversees the implementation of DAPO policies. Plaintiff respectfully submits that the ongoing field-level reliance on Policy 19-03, despite the adoption of Section 3574, results in a systemic failure to provide the individualized process to which Plaintiff is constitutionally entitled.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

30. Plaintiff is serving his sentence on active parole and resides in the community. Because Plaintiff is not currently "incarcerated or detained in any facility" within the meaning of the Prison Litigation Reform Act (PLRA), 42 U.S.C. Section 1997e(h), the administrative exhaustion requirements of 42 U.S.C. Section 1997e(a) do not apply to this action.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 42 U.S.C. § 1983

31. In the alternative, if an administrative exhaustion requirement is deemed applicable, pursuing the CDCR administrative grievance process would be futile. Plaintiff challenges the systemic enforcement of Policy 19-03 (Amended) over Title 15, Section 3574. Administrative grievance reviewers generally lack the authority to invalidate or override a formal policy directive promulgated by the Secretary of CDCR. Because the administrative appeals process cannot grant the relief requested regarding an overarching policy conflict, exhaustion should be excused. *See In re Thompson*, 172 Cal.App.3d 256, 262 (1985).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

1. A judicial declaration that the application of Policy 19-03 (Amended) to impose categorical temporal minimums without individualized assessment violates the Due Process Clause of the Fourteenth Amendment;

2. A permanent injunction restraining Defendant and subordinate DAPO personnel from utilizing Policy 19-03 to deny earned discharge consideration without providing constitutionally adequate individualized process;

3. An order respectfully requesting that Defendant and CDCR grant Plaintiff a de novo discharge review providing constitutionally adequate individualized process, evaluating treatment completion based on the criteria in Title 15, Section 3574;

4. An order retaining jurisdiction, as the Court deems necessary, to ensure the implementation of Plaintiff's de novo discharge review under Title 15, Section 3574;

5. Reasonable attorneys' fees and costs under 42 U.S.C. Section 1988; and

6. Such other and further relief as the Court may deem just and proper.

DATED: March 2, 2026

Respectfully submitted,

_____

BRENDAN NGEHSI NEWANFORBI

Plaintiff, In Pro Per

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 42 U.S.C. § 1983